## Blankenship v. Blanton et ux.

(Decided June 9, 1931.)

WAUGH & HOWERTON for appellant.

E. POE HARRIS for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

The appellant, Mrs. Mary A. Blankenship, sued the appellees, L. D. Blanton and his wife, to set aside a deed

on the ground of fraud and undue influence, coupled with inadequate consideration. The only question presented is whether the decision of the chancellor denying a cancellation is proper under the facts.

The appellant, a widow with several children, owned a home in the city of Ashland which was not fully paid for. The appellee Blanton owned a small farm in Greenup county. Mrs. Blankenship testified that she met Blanton at the home of his aunt, who was her next door neighbor, and to whom she had expressed her idea of trading her place for some country property on account of her health. She says Blanton proposed an exchange of their properties, and in his pursuit to obtain her place made ardent love to her, and, in addition to the false representations respecting the property, influenced her to make the trade by saying he had filed a suit for divorce and as soon as he could obtain it he would marry her; that he wanted to trade and get the personal property in her name to prevent his wife from getting it; that it would make no difference about the farm, as it would belong to both of them, and his wife could only get the town property. He represented the place as containing between 100 and 101 acres. He agreed to convey it and give her two horses of the value of $300 and some farming tools for her place, on which she owned $420 and taxes, and her notes for $300. He also represented that there was lumber enough on the place with which to build a stable.

Mrs. Blankenship had previously been on the Greenup county farm picking blackberries, and her son took Blanton and her to look at the place before the deal was consummated. She made and delivered a deed to Blanton and received a deed from him two or three weeks later. Nothing was said in the negotiations as to excepting the oil and gas rights from his conveyance, but they were so reserved; and, in place of $300 in notes, the deed recites as part of the consideration the execution of $720 in notes. She says that he hauled off most of the lumber on the place, and that she agreed to accept a cow in lieu of the two horses. She could not read the deed when it was presented because of her limited education and its fine print. A day or two later Blanton volunteered to have it recorded for her in Greenup county, which it appears he did. She admits signing a series of notes, which at the time she understood amounted to $300, on a Sunday morning when Blanton came to her home and

hurried her, displaying impatience and eagerness. The last time she saw him he stated he would be back in two weeks to marry her. It was not until several months later that she learned that the notes which she had signed were for the larger sum, and she immediately took steps to rescind the trade.

Her son who took her to see the place testified that Blanton told them there were 64 acres in it, and pointed out certain lines as the boundary, but which proved to be untrue. The place contained only 45 acres.

Mrs. Blankenship moved out to the country shortly after the trade, and five months later filed this suit to rescind. It appears that she became dissatisfied with living there only after one of her sons married and moved away and another joined the army.

There is some evidence that after the transaction Blanton boasted of the good trade he had made and stated that Mrs. Blankenship was getting her money easy through a pension and he had as well have it as any body else. There is some proof also that he was often seen in her company and was passing as an unmarried man. The appellant's witnesses valued the city property from $2,500 to $3,500 and the farm not over $1,000. It appears that pending this suit Blanton traded the city property for some land in Ohio having a net value of about $3,500.

Blanton testified that at the time of the trade he had known Mrs. Blankenship about four months, was living with his wife and seven children, and had had no trouble with her, although it appears that she was staying in another county. He vigorously denied having courted Mrs. Blankenship and all the representations attributed to him in that relation. She approached him with negotiations for a trade, and pursued him to that end until he yielded to her importunities. He advised her definitely that the farm contained 40 or 45 acres, and says that the city property was in bad repair and very cheaply constructed; that after he acquired it he spent about $300 on repairs and had been assessed $741 for street construction. He ascribed a much larger value to the farm property. He had gone into a full explanation with Mrs. Blankenship as to the reservation of the oil and gas rights. She carefully read over the proposed deed before accepting it, and called his attention to the fact that his wife had not then signed it. He explained that it would be necessary to send it to her in Johnson

county to be signed, and says that when it was returned he delivered it to her and she expressed her satisfaction. Since she agreed to pay him $300 above the debt on her place, he had her sign notes for the $720, which represented the debt of $420 and the difference of $300. He simply gave her some loose lumber on the place and two plug horses. At her request he traded one of them for some stock feed, and her son disposed of the other. He agreed to get her a cow for her watch "even if it cost $50.00." The watch proved to be of little value; nevertheless he bought and gave her a cow that cost him $40 or $45. Mrs. Blankenship paid off one of the notes, and he had traded away the others.

There is evidence tending to prove that the farm was of a greater value than the city property and that Mrs. Blankenship had made a good trade.

Undoubtedly Blanton was right much of a trader and certainly was not hurt in this transaction. Mrs. Blankenship is a mature woman, and, although of limited education and experience, there is nothing to indicate any degree of incapacity to enter into a contract. She went into the trade with her eyes open, and the evidence does not convince us of any material misrepresentation or fraud such as would authorize a rescission even if it should be held that those into whose ownership and possession the city property and notes have passed had full notice and knowledge of the suit at the time. In Herzog v. Gipson, 170 Ky. 325, 185 S. W. 1119, may be found a discussion and consideration of the rule that, if an undue advantage is taken of one's situation and circumstances by and through which an unfair and unconscionable contract is obtained from him, equity will afford relief. As measured by that rule, we find the evidence in this case wholly insufficient to authorize a cancellation or rescission.

The judgment is therefore affirmed.